Good morning, Your Honors. Laurie Teicher on behalf of the petitioner, Mr. Jerry Davis, will attempt to reserve two minutes for rebuttal. Just watch the clock. I will. Thank you. Several weeks ago, this Court entered an order granting a Certificate of Affeasibility on the merits of the sentencing in effective assistance claim, which the lower court had previously found to be unexhausted. I believe that it's clear that that claim is exhausted, and so I'd like to begin there with the merits based upon the letter briefs that have been presented to the Court. How do you get around the – I'm just – you referenced the letter brief, so let's take a look at the one from February 10 from the Office of the Attorney General. The plea agreement says, I understand that if more than one sentence of imprisonment is imposed and I'm eligible to serve the sentences concurrently, the sentencing judge has the discretion to order the sentences served concurrently or consecutively. Do you understand that matters of sentencing are solely up to this Court and no one can promise you that you'll receive any particular sentence? On and on and on. Your answer? My answer is that what this Court needs to take a look at, which is what the Nevada Supreme Court did not take a look at when evaluating that claim, is to take into account the circumstances behind this situation. What you had was Mr. Davis had already previously entered into a plea for the under the influence case months earlier. What happened was he was the victim in a case where he was testifying against some people for substantial bodily injury and that was part of the deal that was put together here in which he pled to that ex-felon in possession case. The ex-felon in possession case and the words that you're quoting from, Your Honor, is the guilty plea agreement that on the same day in court what happened was Mr. Davis went to court with counsel and he entered the plea for that one count. The one count. The ex-felon. The ex-felon in possession. But everybody knew the other case was pending. They knew the other case was pending. That's what this was all about. That's what this was all about, Your Honor, but the argument is that there was plenty of not only superfluous but ambiguous language within that only because when you look at the four corners of that guilty plea agreement, the sentence that he's talking to him about before he's sentenced later, there's a break in the proceedings and he comes back and he's sentenced on the two different counts. When the court is talking to him about the deal that he's entering into on the ex-felon in possession, we're only talking about the one to six. We're talking about the one to six on the ex-felon in possession. There's absolutely no discussion of that under the influence case and how that impacts this deal. Well, so if you're right, the argument relates to his sentencing on the other case, not this case. Well, they're not necessarily. They're combined. Which sentence came first and which sentence came second? Well, he sentenced them together. That's what I thought. I believe that he actually pronounced sentence on the under the influence. You're saying that counsel should have stood up and objected that the plea agreement wasn't being adhered to? Yes. But the plea agreement, well. It was not. Counsel, the plea agreement is not binding on the court. Right. Right. That's true. The plea agreement, it could have been objected. Doesn't that undercut your argument? That's the end of your case. Under, well, no. It's not binding on the court and he knew it. Who knew it? The defendant. Well, the defendant's counsel should have known it. What happened was. Should have known what? That it wouldn't be binding on. He knew it, too. He signed up for that. Well, he signed up for the plea and the package that he signed up for was that everybody in negotiating this case, based upon the extensive strange circumstances surrounding the case, everyone in the program understood that Mr. Davis was going to get concurrent time. That boilerplate language. Well, no. That's because you couldn't bind the judge under Nevada law. And the prosecution lived up to its side of the bargain and made the recommendation for concurrent time. Everybody did what the recommendation was. Everybody knew it wasn't binding. And the judge said, you're one of the worst criminals I've ever seen and gave him consecutive sentences. But it wasn't binding. And what counsel should have done was counsel knew that the recommendation and the whole plea put together, everybody's intentions was for him to get concurrent time. And where trial counsel was ineffective was he should have stood up at that point and said, wait a minute, Your Honor, this is not the scope of the negotiations within this. There was ambiguous language within that plea regarding the sentence running concurrently or consecutively. But that, again, Your Honor, Judge Trott, what I would ask you to take a look at is the fact that that guilty plea, there were no other sentences that were contemplated within that document. And when the judge canvassed him on that plea, there was absolutely no discussion on the record. It was, he did say sentencing is up to me. Well, why were they talking about concurrent sentences if they weren't thinking about another sentence? I mean, you completely lost me. You say this thing is in a vacuum. It's the ex-con with a gun. Anything else was out of anybody's thought. But why did they even talk about concurrent sentences? Well, no one talked about it. That's the key. Sure they did. They told him, well, I understand that if more than one sentence of imprisonment is imposed, I understand that if more than one sentence of imprisonment is imposed, I'm eligible to serve the sentence concurrently. The sentencing judge has the discretion. Whether it's concurrent or consecutive. That was talked about within the agreement. And the argument that Mr. It wasn't discussed during the plea. During the plea there was absolutely no discussion of what he said. This is the plea agreement. Correct. I mean, I'm completely confused. Correct. That's the plea agreement, the document. But when Mr. Davis was canvassed, the argument is that, Your Honor, is that that portion of the plea agreement where it's discussed whether or not it could be concurrent or consecutive is simply boilerplate language, which quite frankly did not apply to that plea. No, I'm tired of boilerplate language. The entire law is boilerplate language. But that's what was in the agreement. And then he was questioned. Do you understand that matters of sentencing are solely up to this Court and no one can promise you you will receive any particular sentence? Yes, sir. Right. But then if you go a few lines further than that, Your Honor, what he says is that Your criminal record is one of the worst I've ever seen. That's true. That's what the judge says, Your Honor. However, if you go further than that, he states that any promises Who's he? Who's he? I'm sorry, the judge. Okay. States that any promises made that are in virtue of this agreement, other than that, I can sentence you. And so in Mr. Davis' mind, those promises pertaining to this agreement is what everybody told him when they all got together, when the DA and his lawyer and parole and probation got together and said, look, this is a strange situation, here we're going. And then the State District Court said this is all nonsense. The State District Court when it reviewed it? Yeah. And the State District Court looked at it as a misadvisement case. And the argument that we're presenting is that this case, and I can see that I would like to save a little bit of time for rebuttal. The argument that we're making here, Your Honor, is that the clause The foregoing excerpt demonstrates that the petitioner's claim that his attorney should have forced the court into adopting the recommendation is belied by the record, and that the petitioner's attorney did not objectively, unreasonably act unreasonably in failing to do so. I mean, the State Court looked at this square in the face and said it doesn't work. And they looked at it primarily as a misadvisement case. My argument, Your Honor, Say that. That would be how I would interpret it. And the interpretation that we're making is that it should be interpreted under contract law and pursuant to Van Buskirk and Buckley and Brown v. Pool, the spirit of the agreement Well, I hate to beat this horse to pieces, but Nevada law doesn't approach it that way. There can't be a contract that binds the judge unless the judge buys into it. That's true, but you can move to withdraw, and you can bring it to the Court's attention, and you can, before sentencing, what the judge, what the attorney should have done was he should have stood up and said, Your Honor, hold on a second, timeout. Timeout what? Timeout. What about the benefit of the bargain? Exactly. Did he argue for concurrent sentences? He did. So he did what you're saying he should have done. He argued before, but once the judge decided to not go along with what everybody determined the terms of the contract were Trying to get us crushed by the Supreme Court again, if we agree with you. I'm sorry?  Yes, Your Honor. I'll save my remaining time. You might want to re-save your remaining time, Counsel. Thank you. Thank you. Thank you, Counsel. Good morning, Your Honors. Alicia LaRue representing the Respondents in this matter. Should this Court find that Mr. Davis did properly exhaust Ground 1 of his habeas petition, he is still not entitled to the release. The Supreme Court said we've read all his papers, and we're acting on the basis of what he filed. Just don't file any more. Yes, Your Honor. And should this Court find that that constitutes exhaustion, then he still is not entitled to relief based on the merits of Ground 1 of his petition. I would remind the Court that Ground 1 is a claim of ineffective assistance of counsel. Therefore, under Strickland, Mr. Davis needs to show, first, that his counsel's actions were objectively unreasonable, and, second, that he was prejudiced by those actions. As the Court was just discussing, in this case, there was neither unreasonable action on the part of his counsel, nor was he prejudiced, because there was no basis for objection. Do we look at the State court's determination of this issue? Did we look at it? Do we? And if that's the case? Yes, Your Honor. You do look at it. It's the last reasoned decision by a Nevada court. And under Harrington, unless that drives into a ditch, we are bound by it. That is correct, Your Honor. As the Court was previously discussing, the State district court found that the petitioner's conduct did not fall below an objective standard of reasonableness when counsel failed to force the Court into following the recommendations of the Department of Parole and Probation. The plea agreement that was entered into in this matter was between the prosecutor and Mr. Davis. The prosecutor upheld his end of that agreement by concurring with the recommendation of parole and probation. Under Nevada law, the State district court judge is not bound by that plea agreement. The State district court exercised its discretion in sentencing Mr. Davis to consecutive rather than concurrent terms. Because the judge's actions were well within Nevada law, there was no basis for objection. Therefore, counsel is not unreasonable for not objecting. And furthermore, Mr. Davis cannot show that he was prejudiced in any way because, again, there was no basis for that objection. Unless the Court has any further questions, I believe that I have nothing further to add. No further questions. Thank you, counsel. Ms. Tyker, you have a little bit of reserved time. Briefly, Your Honors. I would argue that under Harrington, Mr. Davis' counsel has driven him into the ditch and that his representation of him was ineffective. I believe that If that's true, but what's the prejudice? I mean, your client's record was unbelievably bad. The prejudice here, which we argued in the letter brief, is that it should be presumed under chronic. What happens here after sentencing Because you cannot bind the judge. So what's the prejudice? Well, you can move to have the sentence withdrawn. I mean, but if he just stood up and said, Time out, Your Honor. Time out. You know, everybody agreed there should be concurrent sentences. What are you doing? Read the plea agreement. And the judge would have said, Forget it. I mean, that's what the whole point of what he said was. Well, under Nevada law, what he should have said was exactly that, Your Honor. He should have said, Time out. Hold on a second. But it wouldn't have gone anywhere. You need to talk to him. How would that have changed this trial, Judge? This is one of the worst records I have ever seen. Ten felonies. It could have changed things. The point is he should have been able to talk to him. You think it would have changed this judge's view? It could have changed the client's view. You think it would have changed? It may have. It may have. And counsel should have done so. And to not do so was deficient. He had already argued for concurrent sentences. He did. But when it went south, at that point, effective counsel should have stood up and said, Wait a minute. There are other things going on here. There are other remedies. I need to talk to you. I need to talk to my client. Things can be done here. Your Honor, what we would ask for in terms of a remedy is specific performance, not rescission in this case. We would ask that an unconditional writ that the dependent has served as concurrent sentence be granted and ask for his immediate release. Thank you, counsel. Thank you. The case just argued will be submitted for decision.
judges: Campbell, O'scannlain, Trott